UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DOUGLAS FELDE,**

    **Plaintiff,**

  v.                                                                            Case No. 18-CV-84

**MILWAUKEE COUNTY, CHRISTOPHER
LUKAS, KENNETH SKOWRONSKI,
TIMOTHY BROWN and MARCUS BROWN,**

    **Defendants.**

---

### DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

---

Douglas Felde alleges violations of Title VII, the Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act by Milwaukee County and four individual defendants. Defendants Milwaukee County, Christopher Lukas, Kenneth Skowronski, and Timothy Brown move to partially dismiss Felde's amended complaint for failure to state a claim. (Docket # 23.) Defendant Marcus Brown also moves to dismiss the amended complaint for failure to state a claim. (Docket # 31.)

Felde argues against dismissal of his amended complaint. (Docket # 25, Docket # 34.) He also moves for leave to submit a second amended complaint in the event that I find his first amended complaint does not state a claim. The defendants oppose the motion for leave to file a second amended complaint, arguing that it should be denied on the grounds of undue delay and futility. (Docket # 37.)

For the reasons I explain below, I find that Felde's first amended complaint survives the defendants' motions to dismiss. Thus, I need not consider Felde's motion to file a second amended complaint.

**BACKGROUND**

Felde's amended complaint alleges that while he was an Airport Maintenance Worker at General Mitchell International Airport, coworkers and supervisors regularly bullied, harassed, assaulted, and otherwise humiliated him for being gay. (Docket # 20 ¶¶ 20–93.) Felde describes in detail instances of sexual harassment as well as patterns of sexual harassment and bullying that he alleges occurred over years. (*Id.*) Felde alleges that the management and supervisory staff either directly participated in and/or deliberately ignored the anti-gay harassment and bullying against him. (*Id.* ¶¶ 52–67, 76–80, 84, 86, 91–93.) Felde also alleges that he was repeatedly denied transfers to accommodate his disability of bipolar disorder and anxiety, which were worsened by the hostile work environment. (*Id.* ¶¶ 94–111.) Eventually the harassment became so intolerable that Felde resigned. (*Id.* ¶¶ 90, 111.)

Felde filed his first charge with the Equal Employment Opportunity Commission on April 26, 2015. (EEOC # 443-2015-00628, Docket # 20 ¶ 12.) The charge alleged that "Milwaukee County discriminated against him on the basis of his sex and disability and in retaliation for opposing workplace discrimination." (*Id.*)

Almost two years later, on February 6, 2017, Felde filed an intake questionnaire with the EEOC stating that he had been constructively discharged from his employment at the airport on April 22, 2016 due to ongoing sexual harassment, retaliation, and failure to accommodate his disability. (Docket # 20-1.) On March 21, 2017, he filed a verified charge

of discrimination stating that he had requested transfers as a reasonable accommodation in the fall of 2014 and 2015 but was denied. (EEOC # 443-2017-00456, Docket # 20-2.) The second charge reiterated his claim of ongoing sexual harassment, retaliation, and failure to accommodate his disability. (*Id.*)

The EEOC issued right to sue letters for these charges on October 23, 2017 and March 6, 2018. On January 16, 2018, Felde filed his initial complaint in this court against the defendants as well as the Milwaukee County Department of Public Works. (Docket # 1.) The complaint alleged sexual harassment and sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and the Fourteenth Amendment via 42 U.S.C. § 1983; retaliation in violation of Title VII; and disability discrimination under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12203(a)–(b) and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* (*Id.*)

On March 30, 2018 all defendants except Marcus Brown, who had not yet been served, filed a motion to dismiss. (Docket # 13.) The defendants pointed out many alleged deficiencies in the complaint, including that the Milwaukee County Department of Public Works was a non-suable entity, (*id.* at 24).

On April 20, 2018 Felde filed an amended complaint that, *inter alia*, removed the Milwaukee County Department of Public Works as a defendant. (Docket # 20.) Felde also filed a brief in opposition to the defendants' motion to dismiss. (Docket # 21.)

On May 4, 2018 defendants Milwaukee County, Christopher Lukas, Kenneth Skowronski, and Timothy Brown filed a partial motion to dismiss Felde's amended complaint. (Docket # 23.) The defendants acknowledged that Felde had cured some of the defects in the original complaint. (Docket # 24 at 1.) However, they argued that certain

3

claims in the amended complaint were time-barred. (*Id.* at 4–6.) They also argued that the amended complaint did not allege that defendant Lukas had sufficient supervisory authority over Felde to give rise to an Equal Protection claim against him. (*Id.* at 6–10.) On May 25, Felde filed a brief in opposition to the defendants' motion to dismiss. (Docket # 25.) On June 8, the defendants (minus Marcus Brown) filed their reply. (Docket # 29.)

On June 14, 2018 defendant Marcus Brown was finally served with the summons and the amended complaint. (Docket # 30.) On July 5, 2018, Marcus Brown filed a motion to dismiss. (Docket # 31.) Marcus Brown's motion argued that the complaint failed to allege that he had sufficient supervisory authority over Felde, (*id.* at 3–6), that the events plausibly occurred within the statute of limitations period for § 1983 claims, (*id.* at 6–7), or that the conduct was intentional or severe or pervasive enough to constitute actionable sexual harassment, (*id.* at 7–9). On July 26, Felde filed his brief in opposition to defendant Marcus Brown's motion to dismiss. (Docket # 34.) On August 9, Marcus Brown filed his reply.

On August 29, 2018 Felde moved for leave to file a second amended complaint under Federal Rule of Civil Procedure 15 in the event I found that his first amended complaint was deficient. (Docket # 36.) On September 5, all the defendants filed a brief in opposition. (Docket # 37.)

Before me now are the defendants' (minus Marcus Brown) motion to dismiss the original complaint (Docket # 13), the defendants' (minus Marcus Brown) partial motion to dismiss the amended complaint (Docket # 23), defendant Marcus Brown's motion to dismiss the amended complaint (Docket # 31), and Felde's motion to file a second amended complaint (Docket # 36).

4

Because Felde's first amended complaint is now the operative complaint, the defendants' first motion to dismiss (Docket # 13) will be dismissed as moot. I will now address the defendants' motions to dismiss the amended complaint (Docket # 23 and Docket # 31).

## APPLICABLE RULE

The defendants move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). I must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). However, in deciding a motion to dismiss, I am not bound to accept as true legal conclusions couched as facts. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

## ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The defendants argue that the amended complaint fails to allege facts showing that defendants Lukas and Marcus Brown acted under color of state law. (Docket # 24 at 6–10, Docket # 32 at 3–6.) Marcus Brown also argues that the complaint does not allege sufficient facts to show when the events occurred, and therefore the court cannot plausibly conclude that the actions took place within the six-year statute of limitations for § 1983 actions. (*Id.* at 6–7.) Marcus Brown also argues that the complaint fails to show that his conduct was intentional or severe or pervasive enough to constitute actionable sexual harassment. (*Id.* at 7–9.)

   1.   *"Under Color of State Law"*

The amended complaint alleges that, as "supervisors," the individual defendants violated Felde's equal protection rights by, *inter alia*, "directly participating in the harassment and bullying of plaintiff because of his sex and because of his failure to conform to gender roles for men, and/or by permitting and encouraging his coworkers to do so by turning a blind eye to their sexual harassment and bullying of plaintiff." (Docket # 20 ¶ 120.) It also alleges specific behavior by each individual defendant. (*Id.* at ¶¶ 24, 51, 54–65, 69, 76–80, 84, 86, 91, 93, 103–104.)

The defendants argue that the complaint fails to state adequate facts alleging that

Lukas and Marcus Brown were acting under color of state law. (Docket # 24 at 6–10, Docket # 32 at 3–6.) The defendants cite to *Valentine v. City of Chicago*, 452 F.3d 670, 682 (7th Cir. 2006), *as amended* (July 6, 2006), for the proposition that only those with supervisory status over the plaintiff can be found to be acting under color of state law. (Docket # 24 at 7–8, Docket # 32 at 4–5.) The defendants argue that the complaint does not sufficiently allege facts supporting the conclusion that Lukas and Marcus Brown had supervisory authority over Felde, and therefore that they acted under color of state law. (Docket # 24 at 8–10, Docket # 32 at 5–7.)

The defendants erroneously conflate the requirements for Title VII liability with the requirements for showing that a defendant acted under color of state law for purposes of § 1983. *Valentine* did not hold that a plaintiff must allege that the defendants had supervisory authority over the plaintiff to state a claim under § 1983. *Valentine* concerned claims under both Title VII and § 1983, and the language about supervisory authority cited by plaintiffs comes from the portion of the decision addressing Title VII. *Valentine*, 452 F.3d at 678. (Docket # 24 at 8.) To give rise to employer liability under Title VII, the defendant must have had "authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998). *See also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443–54 (2013) (approving the Seventh Circuit's approach and holding that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take

7

tangible employment actions against the victim").

The standard for liability under § 1983 is different. In *Valentine*, the court of appeals noted the dispute between the parties as to whether a defendant needed to be a "supervisor" to act under color of state law for a § 1983 claim, but it did not resolve that issue directly. *Valentine*, 452 F.3d at 683. Instead, the Seventh Circuit restated its standard for determining whether a defendant acted under color of state law for § 1983: "Action is taken under color of state law when it involves a misuse of power, 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' As a result, acts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Valentine*, 452 F.3d at 682–83 (citing *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001) (internal quotations and citations omitted)). *See also Mercer v. Cook Cty., Ill.*, No. 09-CV-5565, 2012 WL 1044549, at *10 (N.D. Ill. Mar. 28, 2018), *aff'd*, 527 F. App'x 515 (7th Cir. 2013).

In fact, no case cited by the defendants discussing liability under § 1983 requires that the defendant exercise supervisory authority over the plaintiff to the extent required for vicarious liability under Title VII. In *Chaparro v. City of Chicago*, 47 F. Supp. 3d 767, 780–81 (N.D. Ill. June 12, 2014), the court granted summary judgment for the defendants when they were merely coworkers with no "measure of authority over the plaintiff" and "none of the incidents about which she complains appears to have arisen because Chaparro was under any obligation to follow their directives." *Chaparro* therefore precluded a § 1983 claim when the defendant had *no authority whatsoever* over the plaintiff. It did not require that the defendant's authority rise to the level of supervisory status such as that required for Title VII liability. Similarly, in *Doermann v. Ill./Dep't of Children and Family Servs.*, No. 09-C-2295,

8

2009 WL 3273367 (N.D. Ill. Oct. 6, 2009), the court dismissed a complaint because it was devoid of any factual allegations concerning the defendant's authority over the plaintiff that would establish that the alleged harassment was committed under color of state law. It reiterated the language of *Woodward v. Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992), that the defendant must have "some measure of authority over the plaintiff," *Doermann* at *2, but it did not require that authority to rise to the level of supervisory status as under Title VII.

Additionally, the defendants argue that Felde's claims against Lukas fail under *Monell*. (Docket # 29 at 6–7) (citing *Kelly v. Mun. Courts of Marion Cty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))). The defendants argue that limiting liability under §1983 only to those with direct supervisory authority over the Plaintiff makes sense because "[t]his properly insulates individuals up the chain of command from personal liability for acts they may not have known anything about or were not in a position to do anything about. If this line of demarcation did not exist, Plaintiff would be able to personally sue every member in the chain of command including the Assistant Director of the Airport, the Director of the Airport, the Director of the Department of Transportation, the County Executive and, theoretically, the members of the County Board. While Plaintiff was at it, he would undoubtedly also sue everyone in the Human Resources Department as well." (Docket # 24 at 10.) Defendants are correct that there is no vicarious liability under § 1983. However, Felde does not allege that Lukas is vicariously liable for the conduct of employees below him. Rather, Felde alleges that Lukas personally participated in the violations of his constitutional rights. Thus, the defendants' concerns about unlimited vicarious liability are not applicable to Felde's claims.

Accordingly, in the absence of any authority holding that a defendant cannot be

liable for a § 1983 violation unless he or she had supervisory authority over the plaintiff such as that required for vicarious liability under Title VII, I will use the test articulated by the Seventh Circuit in *Valentine* and reiterated by district courts in *Chaparro* and *Doermann*: whether the actions were "a misuse of power, 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" In other words, the question is whether the actions were related in some way to the power over the plaintiff that the defendants possessed in their positions as state employees.

### 1.1. Christopher Lukas

The amended complaint alleges that Lukas was Airport Maintenance Manager for General Mitchell Airport. (Document # 20 ¶ 8.) He was responsible for the supervision of the other individual defendants, Supervisor Kenneth Skowronski, Assistant Supervisor Marcus Brown, and Assistant Supervisor Timothy Brown. (*Id.*) He was responsible to direct their work, evaluate their job performance, and impose disciplinary action. (*Id.*) The complaint alleges that all the actions in the complaint allegedly taken by Lukas were taken while carrying out his duties and responsibilities as Airport Maintenance Manager. (*Id.*) The complaint specifically alleges that on or around November 23, 2005, Felde reported a coworker's lewd gesture to Lukas, who failed to take any action to investigate his complaint or prevent similar instances in the future and suggested that Felde had misinterpreted the gesture. (*Id.* ¶ 54.) The complaint also alleges that on December 12, 2014, Felde spoke to Lukas about his coworkers' sexual harassment of him and his fear of retaliation, to which Lukas replied that retaliation "was to be expected." (*Id.* ¶ 79.) Felde also alleges that Lukas dismissed his concerns about his bipolar disorder being worsened by the harassment and bullying from his coworkers (*Id.* ¶ 80.) The complaint alleges that Lukas "was the

appointing authority or designee on many of plaintiff's grievances and in a position to address his concerns with the sexual harassment and retaliatory and bullying behavior of his coworkers and supervisors, however, rather than address plaintiff's concerns Lukas deliberately ignored them and allowed the unlawful and discriminatory conduct to continue." (*Id.* ¶ 93.) The complaint also alleges that when his request for accommodation was denied in 2014, Timothy Brown told him that it was Lukas's decision to deny the transfer. (*Id.* ¶ 103.)

These allegations abundantly support an inference that Lukas was not merely Felde's coworker. He was in a position of state-granted authority over Felde that would have allowed him to redress Felde's grievances in the workplace and/or effectuate a transfer to relieve the harassment and accommodate Felde's alleged disability. Thus, he was acting under color of state law.

### 1.2. Marcus Brown

The amended complaint alleges that Marcus Brown was Assistant Airport Maintenance Supervisor at General Mitchell Airport. (Document # 20 ¶ 11.) He had "supervisory responsibility for the airport maintenance workers, including plaintiff, to include directing their work, evaluating their job performance and recommending and/or imposing disciplinary action." (*Id.*) The complaint alleges that Marcus Brown called Felde derogatory names, made fun of him, directed sexual innuendo and sexually explicit taunts at him and laughed about it with Felde's coworkers, and insisted that Felde show him his underwear. (*Id.* at 55–58, 61.) Felde alleges that Marcus Brown would "harass and humiliate" him, "including in the hallway, on job assignments or in the lunchroom," (*id.* at 56), and that this contributed to the hostile work environment by implicitly giving

11

coworkers permission to speak the same way to Felde, (*id.* at 60).

These allegations support a reasonable inference that Marcus Brown was not merely Felde's coworker. Rather, he had state-granted authority to direct Felde's work, evaluate his job performance, and recommend or impose disciplinary action. With authority over both Felde and his coworkers, he would have had at least some measure of control over Felde's work environment.

I thus conclude that the amended complaint adequately alleges that Lukas and Marcus Brown individually acted under color of state law for Felde's § 1983 claim.

### 2. *Statute of Limitations for § 1983 Actions*

Marcus Brown argues that Felde has failed to allege sufficient facts to plausibly show that the events complained of occurred within the six-year statute of limitations for § 1983 claims. (Docket # 32 at 6–7.) He points out that because Felde filed his complaint on January 16, 2018, the statute of limitations began to run on January 16, 2012. He notes that the complaint states generically that the events occurred between November 2004 until Marcus Brown retired in 2013, (Docket # 32 at 7, citing Docket # 20 ¶ 59), and the only allegation against Marcus Brown with a specific time reference is one event in 2012, (Docket # 32 at 7, citing Docket # 20 at 61). Thus, he argues, it is impossible to conclude that the events took place within the statute of limitations.

Marcus Brown is correct that the statute of limitations for § 1983 claims filed in Wisconsin is six years. *Miles v. Trempealeau Cty.*, 204 F. App'x 570, 572 (7th Cir. 2006). However, under the continuing violation doctrine, events that occurred outside of that six-year statute of limitations may be considered where they contributed to a hostile work environment, as long as at least one of the contributing acts occurred within the six-year

period. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 n. 18 (7th Cir. 2003) ("[A]ny discrete acts that . . . occurred outside of the limitations period for § 1983 actions are barred, but acts that contribute to a hostile work environment may be considered so long as one of the contributing acts occurred within the limitations period."). *See also Paul v. Chicago Transit Authority*, No. 14-CV-03259, 2018 WL 1378183, at *5 (N.D. Ill. March 19, 2018) (citing *Stepney*, 392 F.3d at 240 ("The doctrine applies to claims like sexual harassment, where an individual act cannot be made the subject of a lawsuit when it occurs because its character as a violation did not become clear until it was repeated during the limitations period."). The Supreme Court reasoned that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National R.R. Passengers Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).[1] "Because the 'unlawful employment practice' is not complete until the last act of harassment concludes, older incidents may be considered timely because they are part the same 'practice' as the newer incidents." *Everson v. City of Madison*, 672 F. Supp. 2d 881, 885 (W.D. Wis. Dec. 10, 2009).

The case Marcus Brown cites, *Beito v. Aldrich*, No. CV-07-222-CI, 2008 WL 3457045, at *3 (E.D. Wash. Aug. 11, 2008), is inapposite. In that case, the court dismissed a complaint that broadly alleged only that the plaintiff was "'tortured, shocked, and threatened,' without any reference to time, date, circumstances or alleged actors." *Id.* That is

---

[1] Although *Morgan* concerned a Title VII claim, the continuous violation doctrine applies equally to § 1983 claims. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003).

13

not the case here, where even though every single allegation does not have an attached date, the complaint overall is highly detailed so as to support reasonable inferences about the dates, circumstances, and actors involved. Even if, as Marcus Brown argues, *Beito* stands for the proposition that "[a] complete lack of references to time results in a conclusion that the complaint fails to state a plausible claim for relief," (Docket # 32 at 7), that would not apply here because this complaint does contain time references, albeit sometimes vague ones. This is simply not a case where there is a "complete lack of references to time."

Felde makes detailed allegations of harassing and demeaning behavior by Marcus Brown, and while not every allegation refers to a specific date, Felde alleges that such humiliating sexual remarks were "constant from the time plaintiff transferred to the airport in November 2004 until Brown retired in 2013." (Docket # 20 ¶¶ 55–61.) This time frame clearly encompasses acts occurring within six years of Felde's filing this lawsuit in January 2018. Also, Felde alleges that Marcus Brown "directed inappropriate sexual comments at plaintiff on a weekly and sometimes daily basis, with inappropriate remarks sometimes occurring several times in a given day. Occasionally a month would go by without any comments from Marcus Brown but never more than a month." (*Id.* ¶ 59.) These allegations support a reasonable inference that some of Marcus Brown's offending behavior occurred after January 16, 2012. Thus, I find that Felde's claim against Marcus Brown of a hostile work environment is not barred by the statute of limitations.

   3. *Actionable Sexual Harassment*

Marcus Brown argues that "the only potentially timely claim alleged in the Complaint is clearly not sufficient to rise to the level of a violation of the law." (Docket # 32 at 7.) He relies on his argument that the only allegation plausibly claimed to have occurred

14

within the statute of limitations was the 2012 incident in which he allegedly demanded to see Felde's underwear, arguing that this incident alone is insufficient to constitute a hostile work environment. (*Id.* at 8–9.)

However, as already noted, to establish whether a work environment was hostile, a court may examine contributing events outside the statute of limitations period as long as at least one event occurred within that period. Because the complaint supports a reasonable inference that some of Marcus Brown's alleged offensive behavior occurred after January 16, 2012, the court may examine the entirety of Marcus Brown's alleged behavior even if it occurred before January 16, 2012.

Marcus Brown does not dispute that Felde's allegations, considered in their totality, state a claim for actionable sexual harassment. Indeed, Felde alleges specific facts supporting an inference that Marcus Brown both "participated in creating a hostile work environment and condoned the hostile actions of other employees." *See Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Thus, the complaint states a claim of actionable sexual harassment under § 1983.

  4. *Alleged Refusal to Transfer*

In order to bring a Title VII or ADA action in Wisconsin federal court, a plaintiff must file a charge with a federal or state equal rights agency within 300 days after the alleged unlawful action occurred. 42 U.S.C. § 2000e-5(e). *See Ferrill v. City of Milwaukee*, 295 F. Supp. 2d 920, 923 (E.D. Wis. 2003) (explaining that Wisconsin is a "deferral state" in which plaintiffs have 300 days to file a Title VII charge rather than the 180-day statutory default; also noting that the 300-day limitation is subject to a number of tolling mechanisms). *See also* S*tepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004)

(explaining that the 300-day limitation applies to ADA claims because the ADA's enforcement provision expressly incorporates Title VII's enforcement provision).

Felde argues, and the defendants concede, that Felde's EEOC intake questionnaire filed on February 6, 2017 can be construed as an EEOC charge for purposes of the statute of limitations. (Docket # 20 ¶ 16, Docket # 24 at 4–5.) Counting back 300 days, the defendants arrive at April 12, 2016 as the date before which actions occurred outside the statute of limitations for the second claim. Therefore, the defendants argue, any actions occurring between the filing of the first EEOC charge on April 26, 2015 and April 12, 2016 cannot give rise to liability under Title VII or the ADA. (Docket # 24 at 4–5.)

The defendants point to only one specific allegation that they argue is barred by the statute of limitations: the alleged refusal of Felde's request for a transfer sometime between when he filed his first EEOC charge on April 26, 2015 and December 31, 2015. (*Id.* at 6.) They argue that "any claims arising out of this requested transfer, whether based on sex or disability discrimination or retaliation, must be barred." (*Id.*) Notably, however, the defendants do not point to any of Felde's causes of action that relies upon that particular event. Thus, even if that one event were time-barred, that would not result in the dismissal of any of Felde's claims.

Furthermore, although the alleged 2015 refusal of Felde's transfer did occur outside the statutory limitations period, it is not time-barred. Felde does not suggest that the 2015 refusal to transfer him is alone actionable under either Title VII or the ADA, in which case it would clearly be barred by the statute of limitations. *See Teague v. Northwestern Memorial Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) ("[a] refusal to accommodate is a discrete act— not an ongoing omission—and therefore the continuing violation doctrine does not apply")

(citing *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130–31 (1st Cir. 2009)); *Paul v. Chicago Transit Authority*, No. 14-CV-03259, 2018 WL 1378183, *5 (N.D. Ill. March 19, 2018) (citing *Stepney*, 392 F.3d at 240); *Rouse v. Chicago Transit Authority*, No. 13-CV-5260, 2016 WL 5233591, *6–11 (N.D. Ill. Sept. 21, 2016). Rather, Felde argues that the repeated refusal to transfer Felde was a contributing factor to Felde's alleged constructive discharge on April 22, 2016, which defendants have conceded was timely charged. (Docket # 20 ¶¶ 123, 126; Docket # 25 at 5.) Relatedly, under the continuing violation doctrine already explained that applies to Title VII and § 1983 actions, any relevant actions between April 26, 2015 and April 12, 2016, including the 2015 failure to transfer Felde, are not time-barred insofar as they contributed to the sexual harassment and allegedly hostile workplace.

5.   *Second Amended Complaint*

While expressing confidence in the first amended complaint, Felde moved for leave to file a second amended complaint to remedy what the defendants claimed were defects in the first amended complaint justifying dismissal. (Docket # 36.) Because I find that the first amended complaint survives the defendants' motions to dismiss, Felde's motion to file a second amended complaint will be denied.

## CONCLUSION

Because the first amended complaint adequately states a claim upon which relief can be granted, I will deny the defendants' motions to dismiss for failure to state a claim. Accordingly, I will also deny the plaintiff's motion to file a second amended complaint.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion to dismiss plaintiff's complaint (Docket # 13) is hereby **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the defendants' partial motion to dismiss plaintiff's amended complaint (Docket # 23) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that defendant Marcus Brown's motion to dismiss plaintiff's amended complaint (Docket # 31) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's expedited motion for leave to file a second amended complaint (Docket # 36) is hereby **DENIED**.

Dated at Milwaukee, Wisconsin this 16th day of November, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge